**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELECTRA REALTY COMPANY, INC., and LEBO REALTY, L.P., | |
| Plaintiffs, | 1:19-cv-977 |
| v. | Hon. John E. Jones III |
| KAPLAN HIGHER EDUCATION CORPORATION, | |
| Defendant. | |

**MEMORANDUM**

**August 7, 2019**

In this breach of contract action, Plaintiffs Electra Realty Company, Inc.

("Electra Realty") and Lebo Realty, L.P. ("Lebo Realty") (collectively,

"Plaintiffs") claim that Defendant Kaplan Higher Education Corporation

("Kaplan") is liable, as a guarantor, for the default of two leases on properties

owned by Plaintiffs.  Presently before the Court is Kaplan's Motion to Dismiss for

Failure to State a Claim.  (Doc. 4).  For the reasons explained below, we will grant

Kaplan's Motion.

## I.   INTRODUCTION

Plaintiffs initiated this action by filing a Complaint in the Court of Common

Pleas of Dauphin County, Pennsylvania, on May 2, 2019.  Kaplan filed a Notice of

Removal to this Court on June 6, 2019.  Plaintiffs Complaint states the following

factual allegations, which we assume to be true.

Electra Realty and Lebo Realty separately entered into lease agreements

with Thompson Education, LLC, ("Thompson"), a subsidiary of Kaplan.  (Doc. 1-

2 at ¶¶ 5-6, 8).  The two leases provided for ten-year terms beginning September 1,

2006.  (*Id.* at ¶ 7).  Kaplan is the guarantor on the two leases by agreement dated

May 22, 2006.  (*Id.* at ¶ 4).  Plaintiffs attached the lease agreements and the

guaranty agreements as exhibits to their Complaint.

On March 24, 2015, in letters separately addressed to Electra Realty and

Lebo Realty, Thompson, through Kaplan, informed Plaintiffs that it was selling the

business assets at the lease locations to Education Corporation of America

("ECA").  (*Id.* at ¶ 9).  The letters further stated that the two leases would be

assigned to and assumed by Virginia College, LLC ("Virginia College"), a wholly

owned subsidiary of ECA.  (*Id.* at ¶ 10).  Kaplan asked Plaintiffs to sign an

acknowledgment portion on the letters.  (*Id.* at ¶ 13).  Kaplan also enclosed

releases of guaranty with the letters and asked Plaintiffs to sign them, indicating

that ECA would execute a substitute guaranty.  (*Id.* at ¶ 11).   Plaintiffs also

attached the letters and releases as exhibits to their Complaint.

Richard Lebo ("Mr. Lebo") signed in acknowledgment of the letters as

president of Electra Realty and managing partner of Lebo Realty on March 24,

2015.  (*Id.* at ¶¶ 14-15).  Mr. Lebo also executed the releases of guaranty on April 27, 2015.  (Exs. C, D to Pl.'s Compl.).  ECA did not execute a substitute guaranty in favor of either Plaintiff.  (Doc. 1-2 at ¶ 20).  At the time that Plaintiffs executed the letters and releases, ECA appeared solvent; now, however, ECA is insolvent. (*Id.* at ¶¶ 22, 24).

On February 4, 2016, Plaintiffs executed amendments to the two leases.  (*Id.* at ¶¶ 26-27).  The amendments extended the initial terms of the leases to February 28, 2019, increased the base rent for the properties, and provided Virginia College a renewal option to extend the leases another three years.  (Exs. E, F to Pl.'s Compl.).  On May 15, 2018, Virginia College exercised its renewal options and extended the leases to February 28, 2022.  (Doc. 1-2 at ¶¶ 28-29).  Subsequently, Virginia College defaulted on its rent payments.  On November 7, 2018, Plaintiffs separately provided notice to Virginia College that its rent was past due.  (*Id.* at ¶¶ 30-31).  Plaintiffs now bring this action claiming that Kaplan is still the guarantor on the leases and is obligated to pay the rent.

Kaplan filed the instant Motion to Dismiss and supporting brief on June 20, 2019.  (Doc. 4).  Plaintiffs jointly filed an opposition brief on July 19, 2019, (Doc. 9), and Kaplan replied on August 2, 2019.  (Doc. 10).  Having been fully briefed, the Motion is ripe for review.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise

a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499

F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to

satisfy the plausibility standard, the complaint must indicate that defendant's

liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678.  "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of entitlement to

relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later

formalized in *Iqbal*, a district court must first identify all factual allegations that

constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*,

550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth"

and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss.

*Iqbal*, 556 U.S. at 679.  Next, the district court must identify "the 'nub' of the . . .

complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.*  Taking

these allegations as true, the district judge must then determine whether the

complaint states a plausible claim for relief.  *See id.*

However, "a complaint may not be dismissed merely because it appears

unlikely that the plaintiff can prove those facts or will ultimately prevail on the

merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. DISCUSSION

At the heart of this Motion is an issue of contract interpretation. Because we exercise diversity jurisdiction in this matter, we apply Pennsylvania contract law. Kaplan argues that Plaintiffs unconditionally released it from its obligations as guarantor. Plaintiffs argue that the releases were contingent on ECA executing a substitute guaranty in their favor and that Kaplan had an obligation to ensure that ECA did so, which it failed to do.

The letters to Plaintiffs attaching the releases asked Plaintiffs to countersign to indicate:

> (i) your consent to the Transaction [i.e., the sale of the assets to ECA] and the assignment of the Lease[s] pursuant to the Assignment and Assumption Agreement[s] (the "Assignment[s]"), (ii) your acknowledgment that Tenant [i.e., Thompson] and Virginia College have fully complied with, or been granted a waiver with respect to, the terms of the Lease[s] and any other requirements pertaining to consent and notice under the terms of the Lease[s] in respect of the Assignment[s] and the Transaction, (iii) that, effective upon the closing of the Transaction, you unconditionally, irrevocably and forever release and discharge Tenant from any and all present, previously existing and hereafter arising obligations, duties or liabilities of any type or nature which are evidenced by or arise under or in respect of the Lease[s], whether any such obligations, duties or liabilities are known or unknown as of the date hereof or as of the date

6

upon which the closing of the Transaction occurs, and (iv) that you represent and warrant to Tenant that you are the sole owner of, and have not assigned, sold, transferred or otherwise disposed of, any claim referred to in the preceding clause (iii).

(Exs. C, D to Pl.'s Compl.).  In addition, the letters requested that Plaintiffs "execute and deliver to Guarantor [i.e., Kaplan] the Release[s] attached . . . in connection with Education Corporation of America, a Delaware corporation executing a substitute guaranty in your favor." (*Id.*).  The releases included the following language:

> WHEREAS, in connection with the closing of the Transaction, Guarantor has requested that it be released and discharged from the obligations under the Guaranty at which time Education Corporation of America will execute a substitute guarantee in favor of Landlord.

> NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

> 1. <u>Release of Guarantor</u>.  Effective upon the closing of the Transaction, Guarantor shall be and hereby is unconditionally, irrevocably and forever released and discharged from any and all present, previously existing and hereafter arising obligations, duties or liabilities of any type or nature which are evidenced by or arise under or in respect of the Guaranty, whether any such obligations, duties or liabilities are known or unknown as of the date hereof and the Guaranty is hereby terminated and of no further force or effect, and Landlord represents and warrants to Guarantor that Landlord is the sole owner of, and has not assigned, sold, transferred or otherwise disposed of, any such claim.

> . . .

> 3. <u>Representations</u>. Landlord represents to Guarantor that the individual executing this Release on behalf of Landlord has the

7

capacity and authority to execute and deliver this Release on behalf of Landlord, and that this Release, as so executed and delivered, is the legal, valid and binding obligation of Landlord.

(*Id.*).

Plaintiffs argue that, in both the letters and the releases, securing a substitute guaranty from ECA was a condition precedent that Kaplan had a duty to perform; without satisfaction of the condition, the releases never went into effect. A plain reading of the letters indicates that Plaintiffs' countersignature demonstrated their assent to the sale of the assets to ECA, confirmation that Thompson and Virginia College had met consent and notice requirements under the leases, agreement to release *Thompson* from any obligations under the leases, and representation that Plaintiffs owned the properties. The request to release *Kaplan* from its obligations – i.e., the guaranties – was addressed separately and does not appear to be part of the request for a countersignature on the letter. Indeed, it would make little sense to ask Plaintiffs to both countersign the letter to release Kaplan *and* execute the enclosed releases. Thus, to the extent that the letters did form a binding contract, the release of Kaplan from its guaranties does not appear to have been part of the terms of that contract. We therefore look strictly at the releases themselves.

The releases only allude to a substitute guaranty in the final "whereas" clause. Generally, "[r]ecitals in a contract, such as 'whereas' clauses, are merely explanations of the circumstances surrounding the execution of the contract, and

8

are not binding obligations unless referred to in the operative provisions of the contract." *In re Scott*, 600 B.R. 506, 509 (W.D. Pa. 2019) (quoting *Mozdzierz v. Accenture, LLP*, Civ. Act. No. 06-3877, 2010 WL 4273323 at *6 (E.D. Pa. 2010); *see also Neal D. Ivey Co. v. Franklin Assoc.*, 87 A.2d 236, 240 (Pa. 1952) (stating that "specific terms in the body of the contract control" recitals, such as whereas clauses). Plaintiffs argue that the whereas clause at issue here was referred to in the body of the contract and, therefore, incorporated by reference. Plaintiffs appear to suggest that the substitute guaranties were the "valuable consideration" referred to in the operative portion of the releases. Nothing in the wording of the releases, however, indicates that the parties intended a substitute guaranty to serve as consideration.[1] No other aspect of the controlling body of the contract refers to a substitute guaranty and, therefore, we do not find that it was incorporated. Accordingly, the mention of a substitute guaranty in the recital does not create a binding obligation on Kaplan.

Furthermore, Plaintiffs argument that the recital created a condition precedent fails under standard principles of contract interpretation. "A background recital may not contradict a substantive provision of the contract." *Wyeth Pharm., Inc. v. Borough of West Chester*, 126 A.3d 1055, 1062 (Pa. Commonw. Ct. 2015).

---

[1] This is further evidenced by the subsequent inclusion of language indicating Plaintiffs' assent to be bound by the agreements. Such language itself, as we will discuss later, provided the necessary consideration.

Here, the operative portion of the contract specifically states that Plaintiffs agreed to release Kaplan "unconditionally." "[A]n act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties." *Lesko v. Frankford Hospital-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011) (quoting *Shovel Transfer and Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 139 (Pa. 1999)). The language of the releases is clear and unambiguous: the release was to be unconditional. We see no reasonable basis to find that the parties intended to create a condition precedent; indeed, to interpret the releases that way would permit a background recital to directly contradict the operative portion of the contracts.

Plaintiffs next argue that the releases are invalid for lack of consideration. Kaplan counters that the releases are valid regardless of whether there was consideration because the releases contain language that Plaintiffs intended to be legally bound and are covered by the Uniform Written Obligations Act ("UWOA"), 33 P.S. § 6. The UWOA states that "[a] written release or promise . . . shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 P.S. § 6. Here, by executing the releases, Plaintiffs represented that the releases "as so executed and delivered, [are] the legal, valid and binding obligation[s]" of Plaintiffs. (Exs. C, D to Pl.'s Compl.).

10

Plaintiffs argue that the releases also refer to "valuable consideration" and that the

UWOA language itself is not consideration, suggesting that consideration was

contemplated by the parties but not given.  Plaintiffs cite an Eastern District

opinion from 1981 for the proposition that the UWOA language is not itself

consideration.  *Paul Revere Protective Life Ins. Co. v. Weis*, 535 F.Supp. 379 (E.D.

Pa. 1981).  The Pennsylvania Supreme Court, however, has stated otherwise.[2]

*Socko v. Mid-Atlantic Sys. of CPA, Inc.*, 126 A.3d 1266, 1276 (Pa. 2015).  In

*Socko*, the Supreme Court explained that the UWOA was

> intended to revive the function of the seal as it formerly existed but
> without the formality, ritual, and shortcomings associated with seals. .
> . . This being the case, the UWOA was viewed as providing a
> substitute for the seal – thus providing consideration – and, consistent
> with the language of the statute, the lack of actual consideration would
> not result in an invalid or unenforceable agreement.

*Id.* at 1277.  Thus, the Pennsylvania Supreme Court "has interpreted [the UWOA]

to supply the necessary consideration for an agreement."  *Id.* at 1276 (citing

*Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 845 (Pa. 1957) (stating

that UWOA language has the same effect in importing consideration as a seal on

an agreement).  The UWOA language in the releases, therefore, provides

consideration, and the releases are valid and enforceable.[3]

---

[2] As noted earlier, because we sit in diversity, we apply Pennsylvania law.
[3] The leases state that the guaranties would remain in force even if the leases were amended.
Kaplan suggests that the amended and renewed leases with Virginia College were "new" leases,
while Plaintiffs argue that they were merely amendments and that the guaranties should remain
in force.  However, because we find that the releases are valid and enforceable and

## IV.  CONCLUSION

For the foregoing reasons, we find that the releases here are valid and enforceable and that they unconditionally released Kaplan from its obligations as a guaranty.  Thus, Plaintiffs cannot sustain breach of contract claims against Kaplan, and Kaplan's Motion to Dismiss will be granted.  A separate order will issue consistent with our ruling.

---

unconditionally discharged Kaplan's obligations as guarantor, this argument is essentially moot, and we need not address it.